Good afternoon. So we've got both attorneys in front of us. I think it's Mr. Schlesinger that goes first. That's right, your honor. David Schlesinger for the appellants. I'll plan to reserve three minutes for the vote. May it please the court, counsel, this is an appeal of a grant of JMOL following a jury trial in which the jury had been deliberating for 15 hours and the court ordered a mistrial on its own motion and then subsequently granted JMOL. There are two issues before the court, primary issue that is. The first is, must an individual bringing a claim for unlawful screening under the ADA, under B6, prove that they are a qualified individual? And second, if the answer to the first question is yes, has Mr. Montgomery submitted a jury question in this case? With respect to the first question, I submit the answer is no. The purposes of the ADA Amendment Act of 2008 was to make it easier for plaintiffs to prove discrimination and to shift the attention of courts from the status of employees to the motivations of employers. Can you point to any case since 2008, it's been quite a long time, that has agreed with the position you're taking here? No, Your Honor, I haven't. I don't have a case, squarely on point, but I don't have a case rejecting me. And even the amici who are disability advocates don't agree with you on this point? I don't know that they have taken a strong position on it. I think on page 16 they say to establish a prima facie case he had to show, among other things, that he was a qualified individual with a disability. Yeah, and I guess that speaks for itself. What I would say is this is a serious argument, and I know that it hasn't been raised a lot, but I think it's an argument that is absolutely worth the court's attention. It's important for the court to appreciate that this court's decision in Bates, which got a lot of attention, it's a significant case, came out the courts, this court, the lower court, a concurrence, and a partial dissent, they're all struggling with the question of what constitutes, or whether, on a B6 claim, qualified individual needs to be proven. And they can't, the court is really wrestling with, and there's not a complete agreement as to what exactly the showing is, and then the ADM Amendment Acts happen. And what Congress does is it and that change has meaning. It must have meaning, and it hasn't been interpreted, and it needs to be. And when it is, it's clear that what the change was to change to essentially to do the following things. If a plaintiff proves that the defendant had done one of the following things in B1 through 7, it used to be prior to the Amendment Acts that you had proven discrimination. Then, after the change, it was you had proven discrimination against a qualified individual with a disability. And the purpose of the Act, again, was to make the, make it easier to prove discrimination. So the point is, that language, discriminate against a qualified individual with a disability, that is, that tracks Section A of the ADA, the general rule. But you can't do that, that's discrimination. So one way to do that is by proving the text of B6. And if, in the AD Amendment Acts, Congress intended to do the opposite thing and make it harder to prove a claim under B6, or to make it harder to prove those other subdivisions under B, it would have just added the words qualified individual to the sub sections where it's missing, including B6. Sorry, could I just ask you to assume, for some questions that I have, that you do need to show that you're a qualified individual. I had a question about assuming that that was part of the burden. I'm still not totally clear on how it's supposed to be determined what the prerequisites of the job were that you need to be qualified for. It seems to me that the jury instruction here was pretty vague, it just said qualified individual, it didn't list job requirements. Can you speak to what your understanding is of whose burden it should be, and at what stage in the prerequisites of the job were? Yes, Your Honor. Once you get to trial, I think the question is just, is it proven beyond a reasonable... But it's like, what needs to be proven? I mean, is it a list of 20 different prerequisites for this job, or is it only two? I mean, should someone have proposed a jury instruction to say what those prerequisites were? What should happen? This is the heart of the second part of my argument, Your Honor, and I think it's a really important question, obviously. And so, let's, we can return to Bates. If the court is going to apply Bates, one of the things that Bates says is that there is a crucial difference between qualification standards and essential functions. And when we're thinking about what, and litigating about what the plain text of the ADA says that an individual is a qualified individual if they can perform the essential functions of the job. And if we look at Bates, it's crystal clear that the essential functions are more limited than every single thing the employer wants, or even requires. But who decides? Is it a jury question? Is it for the judge to decide? And let me just stop there. Who decides this question? I think it can be a jury question. It was submitted to the jury here. But it wasn't, really. There was no, there was no question asking the jury. I understand the jury then didn't decide the case, but if the jury had, I didn't see anything in the jury instructions that asked the jury to specify the prerequisites of this job. Yes, that's, that's true, Your Honor. It wasn't very precisely litigated. And then complicating matters is the, the subsequent case, Anthony v. Trax, that came out. And the question of how that applies. And it's, it's important, I think, to, to appreciate that in Anthony v. Trax, the, there was a contract that, a government contract that Trax had. And in order to fulfill the government contract, Trax needed to hire an individual that had a bachelor's degree. And so being a person who was a technical writer, who had a bachelor's degree, was essentially part of the essential functions according to, according to this court. And that is distinguishable from the circumstances at issue here, which, as, you know, Your Honor is, is pointing out similarly, is really not litigated. It was not litigated, but. But I'm wondering if that's your problem at this point or theirs. I mean, they say that a requirement of this job was no safety violations for the last two years. Do we take that as given? Because it was something that was in the record that they were asking about? Or do we somehow not take that as given? Your Honor, I'm that out. So first of all, if you look at the job description itself, the employer's job description, which under the regulation, which discusses what constitutes an essential function, the court must look at. It doesn't even list these interview questions that defendant is arguing about, the issue about discipline for a safety violation and not being terminated. You know, if I can cut to the in the job application process, he's asked if you had a safety violation in the last two years. He says no. In fact, he was held responsible by his prior railroad employer for a derailment, and he was fired as a result. So it's just a flat-out lie. He's also describes as why he was laid off from his other job as downsizing. But in fact, he was laid off because he took a truck home. This is a, had he told the truth at the application stage, he never in the world would have been hired. I'm not sure why we're hearing this appeal, because he's gonna lose sooner or later. He might as well lose now. Your Honor, that's just, the first part of that is just, is simply inaccurate. And the reason that, what part is, he didn't, he was not disciplined for a safety violation? Exactly right. I'm sorry. He was not disciplined for a safety violation. He went through what is essentially at the NOVO program at BNSF, and it was non-disciplinary. And we took a deposition for phase two of the trial, because the trial was bifurcated for after acquired evidence. And we interviewed a witness and submitted this evidence to the court. And there is an issue, there is an offer of proof on it that is in the record, which plaintiff's counsel told the court, this is non-disciplinary. And we have evidence that it's non-disciplinary. And nevertheless, the court drops a, dropped a footnote in the grant of GMOL saying, you can't prove you're a qualified individual, because you were disciplined at BNSF. But in fact, he was not disciplined at BNSF. So he has evidence that he was being truthful about that, which the court never got to, because it was bifurcated. And then of course, there's a secondary issue that is, is the issue related to the layoff and, or the termination. And Mr. Montgomery did testify in his deposition that he was terminated for a standard operating procedure violation. But there's a greater context. And the greater context is that there was a layoff occurring at his company at the time. There was a downsizing happening. And he didn't have an opportunity to testify to that at trial as he expected to, given the court's bifurcation order. And that places it in a very different context. And it does create a fact question. But I would like to return to the point that I was responding to with Judge Freeland, because it's important. Defendants, excuse me, Union Pacific's own job description doesn't even list these questions. I think you're wrong about that. ER 571 says, must have zero work related safety violations in the past two years. And ER 572 asks if you've been fired or resigned or forced to leave a position of a job. Your Honor, my, my point is not that it's not listed. It is in the job description. But my point is that it's not listed as an essential function. And the court here determined This gets back to why I was asking, given that you didn't ask for a jury instruction that was limited to the few things that were labeled as essential function or labeled as I guess there was something labeled as educational requirements. Anyway, you might have chosen to try to before trial establish that only part of this job description is is relevant, but you didn't. So I'm not sure why we shouldn't take the whole job description as relevant. The job description is relevant. I'm not suggesting otherwise. But if the court were to look at the the cases that it has, in which it has made a determination about what qualified individual, who qualified individual is, who is established, they have met the essential functions and looks at the EEOC, the BNSF and or looks at the Frendenburg case. And the fact that Mr. Montgomery has submitted including his prior work at BNSF, and the fact that he received a conditional job offer, and the fact that he had expert testimony saying that he was safe to drive a plane or fly, excuse me, fly a plane or drive a train. Those are the types of things that create at the very least a jury question. This is not supposed to be an owner of standard on the employee. And we have exceeded that. The question here is not whether we've established the case, or whether there's a fact question. And the question of whether what the essential functions are is a fact question. It was submitted to the jury. And I mean, this is, I don't think it was submitted to the jury. There was no question submitted to the jury about what were the essential functions of this job. It didn't have, you're right, Ron, didn't ask the jury to decide it, but just ask the question. And often when somebody lists a job, they don't divide it up and say, here are the essential functions for purposes of federal discrimination law. And here are the other things that we want. And those aren't essential functions. They say, here's the job description. And in tracks, I was not the author of the opinion, but I was on the panel. As I recollect, there was nothing in the sort of the formal application that said, it is an essential part of this job that you have the underlying degree. No, it was described as a condition of employment, but it wasn't sort of said, this is essential compared to the other things that aren't. And if I'm talking just sort of commonsensically, and I'm a railroad, and I put in the job description, not having had safety violations within prior period of such and such in time, whether I call that essential or non-essential, it's certainly important. They put it in there for a reason. Your Honor, two things. One is, they did describe it as there's a section on essential functions. They describe what the essential functions are. Then they have another category of things. And then secondly... Maybe I'm saying wrong when I say essential. What I really mean is a essential function and a qualification standard. But if I'm setting up requirements for the job, and then someone says I'm qualified, and he or she doesn't meet the things I've set up as requirements, it doesn't sound to me as though the person's qualified. Well, Your Honor, there's two issues here and related to your question. One is, this issue about people embellishing, to some extent, which I'm not conceding that Mr. Montgomery did because of the context, but people in general embellish on job applications. And the question is going to be, can the employer prove their after-acquired evidence defense? Or is every single thing, in a biblical sense, in an ADA litigation, going to just be all about back to the attributes of the individual and every single job qualification that they can't meet, every single one, they're absolutely out of luck? That is contrary to the ADA Amendment Act. Okay. We've used up all of your time. I'm aware. As you've probably seen, I'm a patsy on time. Let's hear from the other side, and we'll give you a chance to respond. Thank you, Your Honor. I appreciate it. Good afternoon. May it please the court and counsel, my name is Allison Bayless, and I represent the Apelli Union Pacific Railroad Company. The district court's dismissal of Mr. Montgomery's ADA claim should be upheld because, no matter which way you slice it, Mr. Montgomery was not a qualified individual when he applied for the train crew position. Now, let me start by dispelling the notion that he was not required to prove that he was a qualified individual because he brought a claim under 12112B6. Appellants argue that the 2008 amendments to the ADA changed the qualification element in subsection B6 and other subsections of B. But the plain language of those amendments and the legislative history make it crystal clear that Congress did not intend to change the qualification element in any part of the ADA. So let's assume you're right about this. Do you think he had to prove every single thing in this very, very, very long job description? So the Bates case, the Bates versus UPS case, I think practically provides a roadmap for this case. But in Bates there were like four things that the person had to show for qualification. Here you have like seven pages of listed things. Well, and the job description makes clear that you can have, I mean, the language zero safety violations in the last two years is a pretty clear job prerequisite. And there was testimony offered on an offer of proof by Nora Arona that had she known that Mr. Montgomery had this car derailment at BNSS, he wouldn't have gotten an interview. He wouldn't have even been considered for the job. So it's pretty clear this was a job prerequisite. Part of the first step in proving qualification. How did he know that out of all the pages of description that at this trial, he needed to present specific evidence of that? Well, in addition to there being lots of argument about whether or not the car derailment came in, I mean, Appellant's counsel bent over backwards to avoid opening the door to that evidence because the derailment that would have come in. So let me, maybe I should ask this differently. Okay. This trial, was there any evidence that he did not have this qualification? There was none presented to the jury. But what Bates said is that an absence of evidence is insufficient to prove qualification. But why couldn't the jury assume that because he worked at another railroad and because he got a conditional offer, he probably met the job requirements here? Because it has to be more specific than that. And Bates makes, so Bates talked about the job prerequisites. One of them was that the plaintiffs had to have a clean driving record. And it was per UPS's local standards. It wasn't just, you know, an undefined clean driving record. UPS got to define what the driving record meant. And what the court, the Ninth Circuit said in that Anthony versus Trax International court case, is that an individual who fails to satisfy the job prerequisites cannot be considered qualified within the meaning of the ADA unless she shows the prerequisite itself is discriminatory in effect. And there's no question here that not, that having zero safety violations in the two years before he applied for the job was not discriminatory in effect. So the But so you didn't propose a jury instruction that said the jury specifically needs to find that he, you know, it's part of plaintiff's burden to show two years of no safety violations. The jury instruction just asked whether he was qualified. And I'm having trouble understanding why the evidence at trial wouldn't create a presumption that he probably was qualified. Now, that might be that in the second phase of the trial, you would show he wasn't. But in the phase of the trial that actually happened, I'm not sure why a jury couldn't assume that he seems like a qualified person. Because, because the plaintiff has the burden of proof on that. And, and he had to prove not only that he met the job prerequisites, but that he could perform the essential functions of the job. And the court specifically found that the appellants never challenged at the district court level that safety was a essential function of the job. And Mr. Montgomery provided no evidence of his employment history at all to show that he, number one, had zero safety violations, and number two, could safely perform this job. But he did present that he worked at another railroad and he got a conditional offer. So, in fact, I understand that your argument is actually there were lies behind that. But a jury hearing that he worked at another railroad and he got a conditional offer probably would think, oh, he must have been a fine employee. Now, if that's true, it seems like the problem we have now is this trial got bifurcated and things have proceeded in such an odd way that you actually might lose right now, but then win when we send it back, because it seems like you've got a lot to say about why he wasn't qualified. But I'm not sure that any of that, because of how this was bifurcated, none of that came out in this trial. So, two responses to that. Number one, again, going back to the absence of evidence, the cases that the appellants rely on that say the plaintiff demonstrated that they were a qualified individual, number one, the EEOC versus BNSF case, the case they point to to say that because he got a conditional offer, that that's evidence of his qualification. But in that case, the court made very clear that BNSF never challenged that that individual was a qualified individual. And so that case doesn't really support that a conditional job offer in and of itself is evidence of qualification. And the background... But this gets back to, I mean, I don't really understand why you didn't propose a jury instruction that said, this job requires every applicant to show two years of no safety violations. And then he wouldn't have done it. And that would be part of what was being at issue in the trial. But I don't see anywhere where you established that that was what was at stake in this phase of the trial. But I'm not sure that that necessarily needed to be a jury instruction to be clear from the evidence. Like I said, the job description itself and the questions that were asked of Ms. Montgomery in his interview made it clear that one of the requirements of this job was zero safety violation. But does that mean that he needed to assume that at this phase of trial, everything, I mean, there are probably 120 bullet points on this job description. He had to go through and prove every single one of them. Well, I think he was put on notice that this was something he needed to prove because of the arguments back and forth on whether the car derailment came into evidence or not. But I mean, I understand... You say he was put on notice. I think Judge Friedland's question is, is the jury put on notice? And there was certainly evidence in the record from which we could argue that, yes, this was a job requirement. But like I said, I don't know that everything needs to be spelled out in the jury instructions in order for the record evidence to support or not support that this was a job. But even that, I don't think, was contested in the trial itself. I don't think you got up and said one of the requirements of this job was two years of safety, and he never showed it or something. You weren't even allowed to say that. Well, the other thing I would say to that is we made a Rule 50A motion, and the rule itself and the case law makes clear that the whole point of requiring a party to make a Rule 50A motion before it makes a Rule 50B motion is to put the other side on notice of where the deficiencies in their evidence is so they can go back and correct that evidence before the case is submitted. But the problem is the court denied it. I mean, that's how we got in this crazy situation. The court denied the 50A motion. So if the court had granted it, they would have gone maybe. I mean, maybe then you would have won. But if they'd had the chance to be told they had to prove this and couldn't, then you win. But the court didn't make them prove it. No one said this is something that needs to be proven in this stage of the trial. So then it wasn't. I mean, maybe it was by presumption, by inference from the other evidence. But no one was specific enough about this thing that you're now saying is deficient. Well, and the other thing I'll say about the cases that the plaintiffs or, excuse me, the appellants rely on is that all of them, the Mosby, Meacham case in the Sixth Circuit, the Jackson case in the Eighth Circuit, the Carmona case in the Fifth Circuit, they're all situations where the plaintiffs have this work history within the same job with the same employer that they can point to as to why they meet the job qualifications and why they can perform the essential functions. Here we don't know anything about Mr. Montgomery's work history because he purposely did not provide them any information other than I worked for BNSF in a job that was similar to this. But nothing beyond that. I mean, there are a whole host of reasons why someone may not be able to safely perform the essential functions of the job. Maybe they're a careless employee. You know, there are a whole host of reasons. But the point is, there's an absence of evidence. And like Bates made clear, that's insufficient to meet his burden. So the other point- Could I just ask, you might be right that he ultimately wouldn't be able to prove this. But what would be the harm of going back and having summary judgment again where you make this argument that he lied on the application and he doesn't have this two-year thing and so we win, but not basing it on this trial where no one was talking about that? Our argument to that would be that it's futile and there's no reason to send it back because Anthony versus Trax International makes clear that the court's bifurcation order cannot stand that the evidence of the car derailment would come in at trial. And it's undisputed that he therefore does not meet the job prerequisites of this position. There's no dispute that he had this car derailment. They argue that it wasn't a disciplinary action, but that's not what the job description says. There was an interview question that asked, have you ever been disciplined for any safety violations? Now, Mr. Montgomery conceded in his deposition that this was a disciplinary action. But even setting that aside, the job description says zero safety violations. And this was a safety violation, this car derailment. The very document that the appellants point to to argue that it was a nondisciplinary action calls it a violation of the safety rules. Well, you know, maybe this is cutting it too fine. There's a difference between a disciplinary action and the imposition of discipline. You're sliding back and forth between the two. But what I'm saying is the job prerequisite had nothing to do with disciplinary. I understand that also. Okay. And so if this were sent back to the district court, which we don't think it needs to be, because again, we think that he failed to prove his case for an absence of evidence. But if it got sent back to the district court, we'd be right back where we started, which is, is he cannot prove that he's a qualified individual because he does not meet that job prerequisite. Um, I can, there are a couple of other, um, things that I was going to touch on. I don't know how much you would like me to get into, uh, the legislative history on the weather be six requires. Okay. Um, you know, the other thing I will say is the district court did not, um, flip the burden here, did not place the burden on, uh, Mr. Montgomery in, in determining that he did not prove that he could not safely perform this job. The Bates made clear that there's, there's a difference here between being able to, um, meet the essential functions, which in Bates was safely operating a package car and the qualification standard. And it's on union Pacific to prove that it's qualification standard is and that Mr. Montgomery didn't meet that. And that has to do with his medical condition and whether he was at a heightened risk for sudden incapacitation. The district court didn't rely on that in its decision. And we're not relying on that in this argument. What Bates made clear was, again, the plaintiff has the burden to prove the essential, that he can meet the essential functions of the job. In Bates, the essential function was safely operating a package car. And like here, what the, the ninth circuit in the en banc opinion said was there's an absence of evidence. He didn't put on any evidence that he could safely operate this package car. And so they remanded it back to the district court to have that. Pardon me, Mr. DeFelice. Yes. Taking off on what Judge Friedland said. This is a man who was a conductor for the BNSF. And he applied to be a conductor for Union Pacific. Now you're talking to an old railroad attorney. I spent 30 years trying railroad cases and there ain't much difference between a conductor on one line and a conductor on the other. So didn't he meet his burden of making a prime facial showing that he was a qualified individual? Now, I don't say that's the end of the case, because I take your point. That the requirement of not having a safety violation is not discriminatory towards anybody who has a disability. It's not, doesn't appear to be discriminatory. So therefore we don't get into the second and third issues about whether it was job related or reasonable, but let's not argue that he didn't make a prime facial showing that he was a qualified individual. Respectfully, Your Honor, if he had come in and he had said, I worked for BNSF and here's my job history. And now I'm going to call my union secretary, Chris Torres, who was waiting. I was, I was a conductor on the BNSF. And that's insufficient, Your Honor. My, my position or my argument would be he has to show that at BNSF, he safely performed that job. And he never, he never proved that because he couldn't. He didn't safely perform the job. He, he caused a car derailment. And so just to get up and say, I performed a similar job in the past without getting into his work history. And without actually calling that union steward, you can come in and say, yeah, this guy did a great job and I'd hire him again tomorrow, or I'd love to keep him on. They didn't do that. And they didn't do that because they didn't want to open the door to this would have demonstrated without a doubt that he was not a qualified individual. So our position is he was not a qualified individual. He did not prove he was a qualified individual. He could not prove he was a qualified individual. And for all those reasons, the judgment of a matter of alphabetical law should be affirmed. Okay. Thank you. Thank you very much. Mr. Schlesinger, we took you up to time. Let's put two minutes on the clock. Thank you, Your Honor. I appreciate it. This court should carefully study in order to determine what can be a qualified individual and what just ends up being a biblical list of qualifications that no human would ever meet. The court should look at plain language of what the essential functions are, should look at the discussion in Bates about the difference between the qualification standard and the essential functions. And it should look at the regulation that defines what the qualification or what essential functions are. And it's true that there wasn't a lot of specificity around the jury instructions, but this is a grant of JMOL. And it is problematic for the reasons that you have identified, Judge Freeland. And what I hear counsel arguing here at the very end of the argument is that now qualified individual means you've got to be able to perform an equivalent job perfectly for two years. And if you can't show that, you can't even show that you're a qualified individual. Well, meeting the prima facie case in an ADA context is not supposed to be an onerous burden. And if we look at BNSF versus EEOC and other cases from the circuit, the standard that counsel is asking for is far, far, far beyond what the standard has ever been interpreted to be before. This is, if the court were to remand this case, it is not a foregone conclusion that Mr. Montgomery would lose. Mr. Sturtinger, may I ask you this question? How does a requirement of no safety violation discriminate against a person who may be disabled because of a cerebral aneurysm? I could imagine a circumstance in which it would be. Why would it discriminate against people who have aneurysms as opposed to people who didn't have aneurysms? The question is whether you had a safety violation. Right. And just to be clear, there's evidence in this case, there is no safety violation. But the point is that because of the offer proof that I've discussed, but to respond directly to your question, I'm not arguing that it's discriminatory. I'm just arguing it's not an essential function. It goes beyond what this court has ever said is an essential function. And it goes beyond what defendant's, excuse me, appealee's own job description says is an essential function. To be a safe worker is not an essential function of the job. No. To be a safe worker is a different question than being safety violation, discipline free for two years. And as the concurrence recognizes in Bates. You're doing a variation of the same thing. You've slipped in here discipline as distinct from violation. What I am doing, your honor, I think is just quoting the job description, which says, have you been disciplined for any work related safety violation? So both words are in there. Mr. Montgomery answered no, and he was right. That was accurate. So that's my point. And I sincerely appreciate the court's attention. This is a very significant case because what I'm concerned is happening is that we are sliding back into a question only about the attributes of the employee and not talking at all about the fact that Union Pacific has a policy whereby they screen individuals based upon their disability. And there's a 1% standard, and they apply the standard across the board. It's a very significant thing. And all we're talking about is the attributes of Mr. Montgomery. And that's what the ADA amendments are intended to do. Correct. Good. Thank both sides for your arguments. Montgomery versus Union Pacific Railroad submitted for decision. Thank you. Thank you both. Thank you very much.
judges: W. Fletcher, Bea, Friedland